UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
25-10272-LTS

UNITED STATES OF AMERICA

v.

KSENIIA PETROVA

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO COMPEL DISCOVERY

April 1, 2026

DEIN, U.S.M.J.

### I.          INTRODUCTION

This matter is before the Court on "Defendant Kseniia Petrova's Motion to Compel Discovery" (Docket No. 45) ("Motion"). The government has filed an opposition to the Motion (Docket No. 47) ("Opp."). Oral argument was heard on February 10, 2026. For the reasons stated in open court, and explained more fully herein, the Motion is allowed in connection with the defendant's contemplated claims of vindictive and selective criminal prosecution, and her request for the jury instructions provided to the grand jury, as provided below. The parties shall meet and confer and shall notify the court by April 10, 2026 whether a further ruling is needed as to the scope and timing of the discovery to be produced by the government. If so, these issues will be discussed at the final status conference scheduled for April 16, 2026 at 10:30 a.m.

## II.    STATEMENT OF FACTS

While their significance is greatly contested, the facts relevant to the instant motion are largely uncontested.

### Events at Logan Airport

Ms. Petrova is a Russian national and bioinformatics researcher at Harvard Medical School.  She worked under a valid J-1 visa.  On February 16, 2025, she arrived at Logan International Airport in Boston, Massachusetts on a flight from Paris, France.  At Logan, Ms. Petrova did not declare inert formalin-fixed embryonic frog cells (the "frog embryos"), some of which were located by U.S. Customs and Border Protection ("CBP") personnel in Ms. Petrova's checked luggage and some of which Ms. Petrova produced from her carry-on baggage after questioning by CBP personnel.  See Motion at 1-3; Opp. at 1-2.  The details of the interactions between Ms. Petrova and CBP at Logan are contested, but the court was informed at oral argument that the issues relating to the defendant's requests for discovery about these interactions have been resolved.   For present purposes only, the court will assume that the facts as alleged in the criminal complaint are accurate, and that the facts as alleged are sufficient to state a claim for the crime of smuggling goods into the United States in violation of 18 U.S.C. § 545, as charged in the criminal complaint.  See Docket No. 2.

Following questioning by CBP personnel, a CBP officer canceled Ms. Petrova's J-1 visa and declared her "inadmissible pursuant to INA 212(a)(7)(A)(i)(I) as an immigrant without a valid and unexpired immigrant document."  Habeas Opinion at 4, 6.[1]  In response to

---

[1] "Habeas Opinion" refers to the "Opinion and Order Granting in Part and Denying in Part the Federal Respondents' Motion to Dismiss" issued by the United States District Court for the District of Vermont, Case No. 2:25-cv-00240 (the "habeas court") on September 26, 2025.  As detailed herein, Ms. Petrova

[2]

questioning, Ms. Petrova indicated that she had a fear of returning to Russia, as she had protested Russia's invasion of Ukraine.  See id. at 6.  Ms. Petrova asked to be permitted to return to France as she had a valid Schengen visa, which allows her entry into twenty-nine countries in Europe, including France.  Id.  That request was denied.  Id.  The CBP issued a Form I-860 (Notice and Order of Expedited Removal) asserting that Ms. Petrova was subject to expedited removal under 8 U.S.C. § 1225(b)(1) because she was "an immigrant not in possession of a valid, unexpired immigrant visa."  Id. at 6-7.  The order of removal was apparently never signed, however.  Id. at 8.  She was then taken into custody by CBP.

### The Habeas Proceedings

Ms. Petrova was transferred to ICE custody on February 17, 2025, and transported to the Chittenden Regional Correctional Facility in South Burlington, Vermont.  Id. at 7.  On February 23, 2025, Ms. Petrova's counsel filed her original habeas petition and complaint for declaratory and injunctive relief, seeking her release and challenging whether a valid removal order had ever been issued.  Id. at 8.  The next day, on February 24, 2025, Ms. Petrova was transferred to the Richwood Correctional Center in Monroe, Louisiana by ICE.  Id. at 8.  Various pleadings continued to be filed in the habeas court.  Id. at 8-9.  On March 7, 2025, ICE issued a Notice to Appear ordering Ms. Petrova to appear before an immigration judge in Louisiana on

---

filed a petition for writ of habeas corpus and complaint on February 23, 2025, following her detention by U.S. Immigration and Customs Enforcement ("ICE") at Logan Airport.  The government defendants moved to dismiss the habeas petition, as amended, on June 27, 2025.  The Habeas Opinion was discussed in this court, and the facts referenced herein are not contested, at least for present purposes. This court will make no attempt to address all the intricacies of the immigration laws analyzed by the habeas court except to the extent that they are relevant to the instant discovery dispute.

June 26, 2025.  Id. at 9.  The government argued before the habeas court, unsuccessfully, that this notice mooted Ms. Petrova's habeas petition.  Id.

The government moved to dismiss Ms. Petrova's habeas petition and complaint, and on April 22, 2025, the habeas court set a hearing date for May 14, 2025.  Motion at 4.  As of that date, no criminal charges had been brought against Ms. Petrova relating to her attempt to bring the frog embryos into the country.  Rather, it was not until May 2, 2025, after the hearing was scheduled, that Homeland Security Investigations ("HSI") national headquarters made a referral to HSI in Massachusetts to initiate a criminal investigation of Ms. Petrova.  6/18/25 Hearing Transcript (Docket No. 45-4) at 37; Opp. at 3.  At this juncture it appears that it was unusual for the investigation to have been initiated by headquarters, but that will be the subject of discovery.  The criminal complaint was presented to this Court on May 12, 2025, two days before the scheduled hearing before the habeas court.  See Docket No. 2.  The complaint affidavit makes no mention of the habeas proceedings.  Docket No. 2-2.  The sole charge was smuggling in violation of 18 U.S.C. § 545.  Significantly, the criminal charges avoid the issues of whether CBP exceeded its authority in canceling Ms. Petrova's visa and then seeking to deport her due to her failure to have a valid visa – issues which were squarely raised in the habeas proceedings and which have far-reaching implications for the government's policies toward, and treatment of, non-citizens.

On May 12, 2025, the Commonwealth of Massachusetts filed an amicus brief in Ms. Petrova's habeas case challenging Ms. Petrova's detention as allegedly being part of the Trump Administration's attack on foreign students studying in the United States and its "policy of wielding immigration enforcement against students and academics as punishment for non-

[4]

existent or minor offenses that should not incur immigration consequences."  Motion at 4-5.  As

the Commonwealth argued in part:

> The Trump Administration has demonstrated a policy and practice of targeting international students and academics in Massachusetts for visa revocation and detention for nonexistent or minor offenses that are not grounds for inadmissibility.  This punitive approach, which strips noncitizen students and academics of their lawful immigration status and prevents them from completing their studies, threatens the Commonwealth's academic institutions, economic prosperity, and global leadership in education and scientific innovation. . . .

Id. at 4.  On May 13, 2025, the New York Times published an Op/Ed by Ms. Petrova describing

her research and her situation.  Id. at 5.  There was other media attention as well.  Id.

The habeas court held its hearing on May 14, 2025, expressing skepticism at the

government's position, and questioning whether the frog embryos were, in fact, biological

specimens which needed to be declared.  Id. at 5.   A further hearing was scheduled for May 28,

2025.  Following the May 14th hearing, the government unsealed the criminal complaint and

transferred Ms. Petrova to the custody of the U.S. Marshals.  Id. at 5-6.  The U.S. Attorney for

the District of Massachusetts then posted a video on the social media platform X describing Ms.

Petrova's arrest as proof that "[t]he rule of law does not have a carveout for educated

individuals with a pedigree" and approving of the revocation of Ms. Petrova's visa by customs

officials.  Id. at 6.  In apparent recognition of Ms. Petrova's Op/Ed piece, the U.S. Attorney

continued: "It is unfortunate that the New York Times allowed her alleged lies to be

perpetuated with Ms. Petrova's guest essay, another instance of the media not allowing the

facts to get in the way of a good story."  Id.  Thus, it appears clear that Ms. Petrova's status as a

Harvard researcher played a significant part in the manner in which her case was handled, and

[5]

that the government was cognizant of, and sensitive to, the publicity surrounding her detention.

On May 25, 2025, the government argued, ultimately unsuccessfully, to the habeas court that the institution of criminal charges mooted the habeas petition.  Id.  On May 28, 2025, the habeas court held the scheduled hearing and ordered Ms. Petrova released from immigration custody.  Id.  She was then brought to Massachusetts in the custody of the U.S. Marshals, and brought before this court on June 12, 2025 for an initial appearance and detention hearing, where she was released on pre-trial conditions.  Id.

Before the habeas court, Ms. Petrova "submitted compelling declarations and witness testimony that supports the conclusion that what happened in this case was extraordinary and novel," including a declaration from a former U.S. Customs attorney stating that he had never, in his "35-year career as legal counsel for the U.S. Customs Service and as a customs attorney" seen a criminal prosecution such as the instant one where the defendant had not even been processed by CBP for a "failure to declare" violation but faced criminal smuggling charges brought three months later.  Motion at 12-13.

Massachusetts Proceedings

On June 18, 2025, this court held a probable cause hearing, at which HSI Special Agent Brian Goldsworthy testified.  There was a substantial dispute as to whether the embryos Ms. Petrova had brought in constituted "biological products" or "merchandise" and whether they, in fact, needed to be declared.  See, e.g., 6/18/25 Hr'g Tr. at 40, 47, 70, 74.  At the conclusion of the hearing, the government asked for more time to brief the issue relating to the elements of merchandise needed to satisfy the smuggling statute.  Id. at 76-77.  Before that briefing had

[6]

been submitted, on June 25, 2025, Ms. Petrova was indicted on charges of concealment of material fact in violation of 18 U.S.C. § 1001(a)(1); false statement in violation of 18 U.S.C. § 1001(a)(2) and smuggling goods into the United States, in violation of 18 U.S.C. § 545.  Thus, the indictment added charges based on conduct known to the government before the application for the criminal complaint, but not charged in the complaint.  It ensures that Ms. Petrova faces criminal penalties even if her conduct does not, as the defendant argued, support the smuggling charge.

Prior to the Indictment being handed down, the government had given Ms. Petrova until June 24, 2025 to withdraw her requests for immigration relief, depart the United States, and not apply for re-admission for a period of 5 years in exchange for the government resolving her case pursuant to a Deferred Prosecution Agreement, an offer which she declined.  Motion at 7. Thus, there is compelling evidence that the criminal prosecution was linked to Ms. Petrova's immigration status.

The Habeas Opinion

The habeas court issued its Opinion on September 26, 2025.  Of significance, the habeas court found that "thus far there is no evidence that the authority to 'revoke a valid visa' was delegated to the CBP officer in Ms. Petrova's case" and that it appeared that "the CBP officer's actions were unprecedented."  Habeas Opinion at 39-40.  The habeas court noted that the government had not cited "a single case in which a CBP officer revoked a visa and made an inadmissibility determination based on a customs violation."  Id. at 40 n.14.  The habeas court found that "[a]t the pleading stage, Ms. Petrova has . . . plausibly alleged that the CBP officer's actions were in excess of its authority, were contrary to applicable laws and regulations, [and]

[7]

were arbitrary and capricious[.]" Id. at 40.  Noting that she had raised "close and novel

questions" the habeas court concluded that Ms. Petrova "plausibly alleges that the CBP officer

acted contrary to applicable law and the statutory mandate of the INA as well as the statutory

and regulatory framework of the Tariff Act, that her criminal proceedings were initiated for an

improper purpose, and that she was thereby deprived of the limited due process afforded by

Congress to arriving aliens to the United States." Id. at 43.  The habeas proceedings are still

ongoing.

The Motion to Compel

By her motion to compel, the defendant seeks documents in connection with her claim

that her prosecution is unlawful as vindictive or as a selective prosecution.  At issue in

connection with these claims are requests nos. 16-21, 27-29 and the grand jury instructions on

the issue of smuggling.  See Motion at Ex. A.  In addition, the defendant asks this Court to

consider whether the documents in requests nos. 27-29 should be produced regardless of her

claims of improper prosecution.  The parties have been ordered to meet and confer to

determine whether they can agree as to the scope of specific discovery requests in light of the

court's ruling that discovery will be permitted.

III.    **ANALYSIS**

A.    **Vindictive Prosecution**

While there was some disagreement at the pleading stage, the parties are now in

agreement as to the appropriate standard of review.  "In light of the presumption that a

prosecutor has acted in good faith in exercising his discretion to make charging decisions,

courts require a defendant seeking discovery first to come forth with 'some' objective evidence

[8]

tending to show the existence of prosecutorial vindictiveness." United States v. Bucci, 582 F.3d 108, 113 (1st Cir. 2009) (and cases cited). "'Some evidence' is admittedly a protean standard." United States v. Lewis, 517 F.3d 20, 25 (1st Cir. 2008) (addressing standard for discovery in connection with selective prosecution claim).

As the First Circuit Court of Appeals has explained:

A vindictive prosecution-one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right-violates a defendant's Fifth Amendment right to due process. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir. 1987) (citing *Goodwin,* 457 U.S. at 376, 102 S. Ct. 2485). If a defendant raises a presumption of vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its charges.

United States v. Jenkins, 537 F.3d 1, 3 (1st Cir. 2008). The rebuttable presumption of vindictiveness is an "objective" standard "and considers whether a reasonable person would think there existed a realistic likelihood of vindictiveness, not the defendant's subjective impressions." United States v. Zakhari,  85 F.4th 367, 379 (6th Cir. 2023) (quotations and citation omitted). In assessing such likelihood of vindictiveness, the court weighs "(1) the prosecutor's 'stake' in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions." Id. (citation omitted).

It is undisputed that Ms. Petrova's filing of her habeas petition and complaint challenging the cancelation of her visa and the government's efforts to deport her constituted an exercise of her constitutional and statutory rights. See United States v. Abrego, 802 F. Supp. 3d 1055, 1060 (M.D. Tenn. 2025) ("There is no dispute that Abrego exercised his constitutional and statutory rights when he challenged the government's decision to remove him to El

[9]

Salvador."). In this case, the court finds that Ms. Petrova has met her burden of producing "some evidence" of both actual and presumptive vindictive prosecution to warrant discovery.

As an initial matter, the evidence before this Court, which may, of course, be challenged by information produced in discovery, is that Ms. Petrova's actions at Logan would not normally have resulted in felony criminal charges. In addition to the evidence provided to the habeas court, the facts before this Court establish that the criminal investigation was not initiated by CBP or HSI Massachusetts. Moreover, the statements by the U.S. Attorney indicated that Ms. Petrova's status as a Harvard researcher was a factor in the decision to charge her with a felony. The Administration's efforts to discourage foreign students from attending Harvard and other private colleges and universities was widely reported in the media. The habeas court found that the criminal prosecution of Ms. Petrova was unprecedented. These facts strongly support allowing discovery on the claim of vindictive prosecution.

There is also substantial evidence before this Court that supports the conclusion that the criminal prosecution was initiated in response to Ms. Petrova's habeas petition, and to avoid the inquiry raised by the habeas petition – namely whether CBP's actions in summarily voiding a valid visa, without a hearing, due to conduct which would not normally rise to the level of a criminal prosecution, was an appropriate exercise of CBP's authority. There is evidence that the summary cancelation of visas was a goal of the Administration, as asserted in the Commonwealth of Massachusetts' amicus brief. The Massachusetts U.S. Attorney in her public statement following the unsealing of the criminal complaint, referred to CBP's actions in summarily canceling Ms. Petrova's visa favorably. ("The U.S. visa that Ms. Petrova was given – which was revoked by customs officials, as a result of her conduct – is a privilege, not a

[10]

right." Motion at 6).  Nevertheless, Ms. Petrova put forth persuasive evidence before the habeas court that the steps taken by CBP in Ms. Petrova's case were problematic and did not even follow CBP's own rules.  Habeas Opinion at 14-15, 39-40, 42-43.  The stakes for the government in the challenge to CBP's authority was quite high.

As described above, the government made numerous attempts to dismiss the habeas petition, including arguing that the criminal complaint mooted the habeas proceedings.  There is more than "some evidence" to support the conclusion that the criminal proceedings were brought to avoid a resolution of the issues raised by Ms. Petrova's habeas petition, and not due to the seriousness of her actions at the airport.[2]  Where, as here, the facts indicate "that the motivations for [Ms. Petrova's] criminal charges stem from [her] exercise of [her] constitutional and statutory rights to bring suit against the [Government] Defendants, rather than a genuine desire to prosecute [her] for alleged criminal misconduct," the defendant has met her burden of producing "some evidence" of either actual vindictiveness or a realistic likelihood of vindictiveness to entitle her to discovery.  Abrego, 802 F. Supp. 3d at 1061 (and cases cited) (statement by government official that investigation of defendant was in response to a judge's decision questioning his deportation may be evidence of actual vindictiveness, in any event discovery was appropriate under theory of presumptive vindictiveness where government had a significant stake in deterring any future challenges to its authority to deport, and the timing of

---

[2] This conclusion is further buttressed by the fact that the government offered to halt the prosecution if Ms. Petrova would self-deport.  The defendant is entitled to explore whether such an offer is common, as the government contends, or is evidence that the government's criminal case was inappropriately based on conduct that did not rise to the level of a felony.

[11]

criminal investigation established that it began following a successful challenge to deportation order).

The government has asked this Court to limit its consideration to the facts as alleged in the complaint, and to ignore the procedural posture of this matter.  The government contends that the actions of the Massachusetts U.S. Attorney's Office should be viewed in a vacuum, and that the AUSAs who brought the complaint had sufficient evidence of smuggling to warrant the charges.  The court declines to so limit the inquiry.  If HSI headquarters directed Massachusetts to open the investigation with a retaliatory purpose, the intervention of the Massachusetts U.S. Attorney's Office does not shield HSI's conduct from review.  See United States v. Adams, 870 F.2d 1140, 1141, 1144-46 (6th Cir. 1989) (District Court erred in not allowing discovery related to vindictive prosecution claim in connection with tax fraud prosecution, where facts indicated defendant had filed discrimination claim against the EEOC, EEOC may have instigated the prosecution out of revenge, and types of tax errors made traditionally would not warrant criminal prosecution: court rejects argument that EEOC's motivation was not relevant because it was not the charging party).  Ms. Petrova is entitled to discovery in support of a claim of vindictive prosecution.

### B.    Selective Prosecution

The defendant is also seeking discovery in connection with her claim of selective prosecution, the "essence" of which is "that a prosecutor has pursued a case for a constitutionally impermissible reason, such as the defendant's race, religion, or other characteristic cognizable under equal protection principles."  Lewis, 517 F.3d at 25.  Thus, "prosecutorial discretion is constrained by the Constitution" and "the Fifth Amendment forbids

[12]

deciding whether to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. Yu, 161 F.4th 25, 39 (1st Cir. 2025) (internal citations and quotations omitted).[3]  Under such a claim, the defendant must adduce "some evidence," *i.e.* "clear evidence of both the discriminatory effect of the prosecution and the prosecutor's discriminatory intent." Lewis, 517 F.3d at 25.  As the Lewis court explained further:

> For this purpose, the evidence in support of the asserted discriminatory effect must comprise a credible showing that similarly situated individuals who do not share the protected characteristic were not prosecuted.  [*United States v. Armstrong,* 517 U.S. 456, 469, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)].  Similarly, the evidence in support of the asserted discriminatory intent must consist of a credible showing that the government chose to prosecute "at least in part because of, not merely in spite of," the defendant's protected characteristic.  [*Wayte v. United States,* 470 U.S. 598, 610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)] (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 258, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979)).

Id. at 25-26.

"A claim of selective prosecution depends in large part on a defendant's ability to prove that the government has treated him differently from similarly situated offenders." Id. at 21. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." Id. at 27.  The district court is instructed to "assess every material fact in rendering its judgment as to which offenders should be deemed similarly situated." Id.

---

[3] For present purposes only, the parties are not disputing that Ms. Petrova's status as a foreign student with a J-1 visa qualifies as a classification cognizable under equal protection principles.  Therefore, that will not be discussed further herein.

[13]

Here, the government argues strenuously that the Court should compare Ms. Petrova's conduct to others who acted virtually identically, since all of Ms. Petrova's actions were considered by the U.S. Attorney's Office in deciding to bring charges. Thus, the government asks this Court to compare Ms. Petrova's treatment to others who texted with their "coworkers in advance and conceal[ed] frog embryos, research samples in two different bags, and not declaring them and then when first being confronted by a CBP agricultural specialist about whether you have biological materials saying no and then only then presenting the research samples that you are carrying through the border." See 2/10/26 Hr'g Tr. at 22-25. This Court finds the proposed comparison too narrow. While the precise parameters do not have to be defined at this juncture, the evidence before this Court is that no one whose conduct before CBP did not rise to the level of warranting processing for a failure to declare offense was ever charged with a felony, much less stripped of their visa. See Motion at 13. The defendant has met her burden of producing some evidence of discriminatory effect by producing evidence that the only reason she was charged with a felony, in contrast to others who failed to declare comparable materials, was her status as the holder of a J-1 visa who was studying at Harvard.[4]

Similarly, the defendant has met her burden of proving discriminatory intent sufficient to warrant discovery. For the reasons discussed in the preceding section, there is evidence that the government elected to prosecute Ms. Petrova because of her status as a visa holder and her habeas challenge to CBP's actions. For these reasons, the government shall produce documents in response to the defendant's request nos. 16-21, 27-29.

---

[4] The court expects that the parties would further define the appropriate comparisons in connection with any motion to dismiss based on selective prosecution. Nothing herein is intended to limit any parties' ability to argue the appropriate comparison before the trial judge.

[14]

**C.**     **Requests Nos. 27-29**

Ms. Petrova has asked this Court to consider whether the government should produce

the information requested in requests nos. 27-29 separate and apart from whether the

documents should be produced in connection with her claims of vindictive and selective

prosecution.  Specifically, the Defendant has requested:

> 27.  All written policies or procedures concerning border inspection of travelers by CBP, including without limitation policies and procedures concerning the definitions, inspection, seizure, and disposition of food products, agricultural materials, and biological materials.
>
> 28.  All written policies or procedures concerning or comprising guidance to CBP concerning whether, how, and when to refer incidents and/or border seizures for criminal prosecution.
>
> 29.  The policies, procedures, and protocols governing CBP canines and handlers at Logan Airport, along with documents concerning or comprising the certification and training of the canine that allegedly alerted to Ms. Petrova's luggage.

Motion at Ex. A

These categories were not addressed separately from the claims of vindictive and

selective prosecution in the Mion pleadings.  Therefore, the court will allow the parties the

opportunity to meet and confer to determine if agreement can be reached on these categories

of documents.  If no agreement can be reached, the court will address these categories further

at the next hearing.

**D.**     **Jury Instructions**

The Defendant has requested the disclosure of "the legal instructions given to the grand

jury concerning the elements of the charged offenses, applicable mens rea, and definitions of

key terms."  Motion at 23.  Under the unusual facts of this case, the request is allowed with

respect to the charge of smuggling.

[15]

This court recognizes the stringent requirements of secrecy of grand jury proceedings. See United States v. McMahon, 938 F.2d 1501, 1504 (1st Cir. 1991) and cases cited.  "In determining whether to break that traditional secrecy, parties seeking disclosure must show 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'"  Id. (quoting Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222, 99 S. Ct. 1667, 1674, 60 L. Ed. 2d 156 (1979)).  A court may order the disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]"  Fed. R. Crim. P. 6(e)(3)(E)(ii).  While the tradition of secrecy includes legal instructions to the grand jury, at least one District Court judge has recognized that "[w]hat a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy."  United States v. Facteau, No. 1:15-cr-10076-ADB, 2016 WL 4445741, at *5 (D. Mass. Aug. 22, 2016).

Here, the record before this Court is that the smuggling charge was a unique charge given that Ms. Petrova's failure to declare materials did not rise to the level of processing by CBP.  At the probable cause hearing before this court, there was confusion as to the elements required to meet the smuggling charge.  While the government asked for time to brief the issue further, Ms. Petrova was indicted before any briefing was submitted.  The indictment added charges based on statements known to the government at the time of the criminal complaint affidavit, but not previously charged.  Under the circumstances presented here, the defendant

[16]

is entitled to know the standard given to the grand jury on the elements of smuggling under 18 U.S.C. § 545.

## IV.    ORDER

For the reasons detailed herein and in open court, the Defendant's motion to compel (Docket No. 45) is allowed with respect to requests nos. 16-21 and 27-29, and the jury instructions to the grand jury on the elements of smuggling, 18 U.S.C. § 545.  The parties shall meet and confer and shall notify the court by April 10, 2026 whether a further ruling is needed as to the scope and timing of the discovery to be produced by the government.  If so, these issues will be discussed at the final status conference scheduled for April 16, 2026 at 10:30 a.m.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

[17]