UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>KSENIIA PETROVA, )<br><br>Defendant ) | Crim. No. 1:25-10272-LTS-JGD |

**GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**
**PURSUANT TO FED. R. CRIM. P. 59(a)**

The government respectfully submits objections to the Memorandum of Decision and

Order on Defendant's Motion to Compel Discovery dated April 1, 2026 (the "Order," Dkt. 55)

under Federal Rule of Criminal Procedure 59(a).  In haste to provide the defendant with sweeping

discovery, the Order either ignores or misapplies binding precedent.  It is therefore contrary to law

and must be set aside.

## I.  Introduction

On February 16, 2025, defendant Kseniia Petrova, a researcher at Harvard on a J-1 visa,

arrived at Boston Logan International Airport carrying frog embryo samples concealed in her

checked luggage and carry-on bag.  Petrova did not declare the samples to U.S. Customs and

Border Protection ("CBP") as required by law.  *See* 19 C.F.R. 148.11 ("All articles brought into

the United States by any individual must be declared to a CBP officer at the port of first arrival in

the United States[.]").  A CBP agriculture specialist discovered the samples in Petrova's checked

bag, found Petrova, and asked her whether she was carrying biological materials.  Petrova initially

denied that she was carrying biological materials.  Petrova's phone revealed that she had

exchanged messages about getting through Customs with the samples, including a message in

which her principal investigator asked, "What is your plan for getting through customs with samples?" and Petrova replied, "No plan yet.  I won't be able to swallow them."

CBP officers cancelled Petrova's J-1 visa, declared her inadmissible, and took her into custody.  On February 23, 2025, Petrova filed a habeas petition and complaint seeking her release and challenging CBP's cancellation of her visa.

In May 2025, the United States Attorney's Office for the District of Massachusetts ("USAO") charged Petrova by complaint with smuggling, in violation of 18 U.S.C. § 545, based on an investigative referral from Homeland Security Investigations ("HSI").  Petrova was transferred to the custody of the U.S. Marshals and released on conditions in the criminal case.  In June 2025, a grand jury returned an indictment charging Petrova with one count of concealment of material fact, in violation of 18 U.S.C. § 1001(a)(1), and one count of false statement, in violation of 18 U.S.C. § 1001(a)(2), in addition to one count of smuggling.

On December 19, 2025, Petrova filed a Motion to Compel Discovery ("Motion," Dkt. 45) seeking materials related to her claims that this case is a vindictive and selective prosecution, as well as the government's legal instructions to the grand jury.  The government filed its Opposition on January 19, 2026 ("Opp.," Dkt. 47).

The Magistrate Judge held a hearing on the Motion on February 10, 2026.  Dkt. 51 (Hr'g Tr.).  The subsequent Order allowed the Motion "in connection with the defendant's contemplated claims of vindictive and selective criminal prosecution, and her request for the jury instructions provided to the grand jury[.]"  Order at 1.

The government objects to the Order in its entirety.  The Order fails to apply the leading First Circuit cases and their rigorous legal standards for obtaining the extraordinary grant of discovery into matters occurring before the grand jury or a claim of vindictive or selective

prosecution. It justifies such discovery with unsound inferences that do not amount to the kind of objective evidence of vindictiveness or selectiveness Petrova is required to show. Instead, the Order accepts at face value Petrova's characterization of her conduct as a mere failure to declare items at the airport, and of this prosecution as one that could not have been initiated for legitimate reasons. At Petrova's urging, the Order focuses on the actions and alleged motives of CBP and the executive branch at large and imputes them to the USAO's decision to prosecute Petrova, without factual or legal support. As described herein, neither the facts nor applicable law support the Order's grant of Petrova's requested discovery.

## II. Legal Standard

Rule 59(a) provides that, for nondispositive matters, "[a] party may serve and file objections to [a magistrate judge's] order[,]" and "[t]he district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a).[1]

"Under the 'contrary to law' requirement, the district judge reviews pure questions of law *de novo*[.]" *United States v. Aboshady*, 297 F. Supp. 3d 232, 235 (D. Mass. 2018) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)). The district judge reviews "factual findings for clear error[.]" *Id.* (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999)). "Mixed questions of law and fact invoke a sliding scale of review[.]" *Id.* (quoting *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013)).

---

[1] On April 13, 2026, the government notified the Court of its intent to seek review of the Order under Rule 59(a). Dkt. 56 (Status Report). The Court adopted the parties' proposed deadlines for the government's objections and the defendant's response. Dkt. 58.

### III. The Order Makes No Finding of a "Particularized Need" Justifying Disclosure of Legal Instructions to the Grand Jury

First, the government objects to the Order insofar as it directs the government to produce the legal instructions provided to the grand jury with respect to smuggling. Order at 15-16.

Prevailing case law requires a defendant to establish a "particularized need" warranting disclosure of grand jury materials, including prosecutors' legal instructions. Only a "compelling necessity" warrants a review of grand jury proceedings. *United States v. Capozzi*, 486 F.3d 711, 727 (1st Cir. 2007) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). "The burden of showing particularized need rests squarely on the defendant." *Id.* (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959)). The Order makes no finding of a particularized need, and the reasons for disclosure stated in the Order do not satisfy that requirement. Instead, in ordering disclosure of the instructions on smuggling, the Order cites a generalized set of circumstances that do not individually or collectively amount to a particularized need for those instructions.

First, the Order finds that "the smuggling charge was a unique charge given that Ms. Petrova's failure to declare materials did not rise to the level of processing by CBP." Order at 16. It relies on the declaration Petrova submitted in habeas proceedings from a longtime customs attorney who stated that he had never seen a situation in which a person not processed by CBP for a "failure to declare" violation was later charged with smuggling. *Id.* at 6. The Order errs in finding it remarkable that Petrova was not processed. After discovering Petrova's frog embryo samples and confronting her, CBP officers cancelled her visa and denied her entry to the country. The record presents no basis for assuming that CBP normally would process a person for a failure to declare *on top of* taking these actions. The attorney's declaration appears to acknowledge that cancelling Petrova's visa took the place of any other administrative citations. *See Petrova v. U.S.*

4

*Department of Homeland Security et al.*, 25-cv-00240 (D. Vt.), Dkt. 72-1 (Quinter Decl.) at 4 ("From the documentation I reviewed, it appears that CBP officers at Logan Airport did not follow the required protocol and decided to cancel Ms. Petrova's visa instead."). Whether or not CBP followed a correct or lawful course of action, these circumstances do not support a conclusion that Petrova's conduct—which went beyond a mere failure to declare—"did not rise to the level of processing by CBP." But even were the charge unique under the circumstances, that fact would bear no relation to the instructions to the Grand Jury and would not support a showing of particularized need for disclosure of those instructions.

Second, the Order points to "confusion" at the probable cause hearing "as to the elements required to meet the smuggling charge." Order at 16. That confusion resulted from one errant reference in the complaint affidavit to an incorrect section of the smuggling statute. The affidavit correctly alleged that Petrova violated the second paragraph of 18 U.S.C. § 545. Dkt. 2-2 (Compl. Aff.) ¶ 3 (alleging that Petrova "fraudulently and knowingly imported and brought into the United States merchandise contrary to law to wit, biological specimens"). However, the concluding paragraph of the affidavit mistakenly tracked the first paragraph of that statute. *Id.*, ¶ 14 (concluding that Petrova "knowingly and willfully, with the intent to defraud the United States, smuggled, and clandestinely introduced, and attempted to smuggle or clandestinely introduce into the United States, merchandise, specifically biological items, which should have been invoiced"). Having learned of the error at the probable cause hearing, counsel for the government obtained an indictment that correctly tracked the second paragraph of 18 U.S.C. § 545.[2] *See* Dkt. 19 (Indictment), ¶ 8 (charging Petrova with "fraudulently and knowingly" importing and bringing

_____

[2] The government did not subsequently submit a brief concerning the correct statutory subpart because the indictment rendered the issue moot.

merchandise into the United States).  There is no reason now to impute any confusion over a drafting error in the complaint affidavit to a facially valid indictment or the grand jury instructions that led to that indictment.

Third, the Order notes that the indictment "added charges based on statements known to the government at the time of the criminal complaint affidavit, but not previously charged."  Order at 16.  The indictment includes two charges not in the original complaint (concealment of material fact and false statement, in violation of 18 U.S.C. §§ 1001(a)(1) and (2)).  The inclusion of these charges casts no doubt on the soundness of the instructions on smuggling.  A criminal complaint is always a preliminary charging instrument, and the government routinely charges cases narrowly by complaint before formalizing its charging theories or strategies in a subsequent indictment or information.  Speculation about the inclusion of additional charges in an indictment does not establish a particularized need to review the legal instructions on the original charge.

Because the Order makes no finding of a particularized need for disclosure of these legal instructions, its ruling as to those instructions should be reversed.[3]

### IV. The Order Errs in Finding Evidence Supporting Petrova's Claim of Selective Prosecution

Second, the government objects to the Order's finding that Petrova is entitled to discovery related to her claim of selective prosecution.  The Order fails to apply governing Supreme Court and First Circuit law requiring the identification of at least one comparator before ordering discovery.

---

[3] While Petrova has established no particularized need for reviewing the legal instruction on smuggling, the government stands ready to provide that instruction for the Court's *in camera* review if requested.

To obtain discovery on claims of selective prosecution, the defendant must put forward "'some evidence' tending to show both discriminatory effect and discriminatory intent"—an evidentiary threshold that is "somewhat below 'clear evidence'" but "nonetheless fairly high." *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "[T]he evidence in support of the asserted discriminatory effect must comprise a credible showing that similarly situated individuals who do not share the protected characteristic were not prosecuted." *Id.* (citing *Armstrong*, 517 U.S. at 469). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Id.* at 27 (citing *Armstrong*, 517 U.S. at 469). In determining which offenders should be deemed similarly situated, a court must focus on "factors that are at least arguably material to the decision as to whether or not to prosecute[,]" including "those that are relevant—that is, that have some meaningful relationship either to the charges at issue or to the accused—and that might be considered by a reasonable prosecutor." *Id.*

The Order recognizes the governing law but expressly fails to apply it. First, it declines to determine which offenders are "similarly situated" to Petrova. "Establishing the 'pool' of similarly situated offenders is the initial step in determining whether Defendant has borne her evidentiary burden of demonstrating discriminatory effect." *United States v. Luthra*, No. 15-CR-30032-MGM, 2016 WL 5946864, at *4 (D. Mass. Oct. 12, 2016) (citing *Lewis*, 517 F.3d at 27). However, the Order foregoes this step. Order at 14 ("the precise parameters [of a comparison of offenders] do not have to be defined at this juncture"). The Order's approach is contrary to law because *Lewis* requires the Court to clarify which offenders are similarly situated at the discovery stage.

Despite bearing the burden, Petrova has never made any effort to define factors that would make other offenders "similarly situated" to her; she simply compares herself to an allegedly vast pool of individuals who fail to declare items at the airport but go uncharged.  This approach, apparently adopted by the Order, is exactly what the First Circuit rejected in *Lewis*.  *Lewis*, 517 F.3d at 26 (rejecting defendant's attempt to define the pool of similarly situated offenders as all others who submitted inaccurate paperwork in connection with federal firearms applications).  Petrova is not criminally charged for a mere failure to declare a generic item.  She is charged with fraudulently and knowingly bringing biological samples into the United States and lying to a CBP officer when confronted about the samples.  As explained in the government's Opposition, several factors set Petrova apart in the eyes of a reasonable prosecutor, including her concealment of laboratory samples, her advance discussions about getting those samples through customs, and her false denial of those samples to a CBP officer.  Opp. at 13.  The Order ignored all of these factors, which are required to be considered under First Circuit law.

At the motion hearing, undersigned counsel described specific factors material to the government's decision to prosecute Petrova.  Order at 14.  The Order quotes that description, construes it as a request to compare Petrova "to others who acted virtually identically," and "finds the proposed comparison too narrow."  *Id.*  To be clear, the government is not requesting so literal a comparison.  Under *Lewis*, "[u]nrelated, irrelevant, or trivial factors cannot meet the materiality requirement and, therefore, cannot be built into the configuration of the pool."  *Lewis*, 517 F.3d at 27 (citations omitted).

In this case, the Court must compare Petrova against others whose offenses involved, at a minimum, some kind of fraud or concealment (*i.e.*, not merely a failure to declare an article), advance knowledge and planning, and a false statement to law enforcement.  The Court must also

consider "the equivalency of the evidence against" Petrova (*e.g.*, documented communications about the offenses) and any other proposed comparator.  *See id.* at 27-28 ("A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another[,]" including, "*inter alia*, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." (citations omitted)).   These criteria are consistent with those accepted by the court in *Lewis* and adopted by courts following *Lewis.   See id.* at 24-28 (affirming, under either abuse of discretion or de novo review, district court's determination that pool of similarly situated offenders "consisted of non-African-Americans and/or non-Muslims who had committed multiple misrepresentation offenses in connection with firearms paperwork, who posed a danger of violence, and who may have had links to terrorism"); *Luthra*, 2016 WL 5946864, at *4 ("Here, in order to present some evidence of selective prosecution to obtain discovery, Defendant is required to show that there are other physicians in the District of Massachusetts who do not share Defendant's protected characteristics and who accepted kickbacks from [specific pharmaceutical company], violated the HIPPA privacy laws, and interfered with the administration of justice by lying to investigators and by directing another to make false statements."); *United States v. Yu*, 494 F. Supp. 3d 66, 67–68 (D. Mass. 2020) (declining to compare defendant charged with criminal theft of trade secrets to other individuals alleged in civil cases to have stolen trade secrets, where defendant worked as a government contractor and was suspected of visa fraud and violating export controls); *United States v. Lapierre*, 2025 WL 3003678, at *3 (D. Me. Oct. 27, 2025) (denying discovery into alleged selective prosecution and noting, "the strength of the evidence of the government's case against a particular defendant is a valid consideration and exercise of prosecutorial discretion").  *See also*

9

*United States v. Wilson*, 123 F.4th 1021, 1028–29 (9th Cir. 2024) (finding that district court abused its discretion in granting discovery on selective prosecution claim because, "[i]n defining [a] control group with only two shared facts—(1) arson (2) within the Central District [of California]—the district court did not account for many other facets of the crimes").

Next, the Order incorrectly finds that Petrova has presented evidence of the existence of similarly situated individuals who were not prosecuted. The Order relies entirely on the attorney statement about individuals not processed for failure to declare violations (described above). Order at 14 (citing Motion at 13). The attorney's statement says nothing about the specific conduct of any individuals, whether that conduct met the elements of any of the offenses charged against Petrova, or whether that conduct presented any of the material prosecution factors that Petrova presented and that the Court must consider. In other words, the attorney statement says nothing about any individuals who "committed roughly the same crime under roughly the same circumstances[.]" *Lewis*, 517 F.3d at 27. Petrova has identified no other individual whom CBP caught with concealed items, who lied to CBP when confronted, and against whom the government had evidence of advance planning. Petrova cannot meet her burden by presuming that such individuals exist and insisting that she alone was singled out.[4]

Finally, the Order errs in finding that Petrova has put forth sufficient evidence of discriminatory intent—"a credible showing that the government chose to prosecute at least in part because of, not merely in spite of, the defendant's protected characteristic." *Id.* at 25. The Order

---

[4] The Order otherwise states: "The defendant has met her burden of producing some evidence of discriminatory effect by producing evidence that the only reason she was charged with a felony, in contrast to others who failed to declare comparable materials, was her status as the holder of a J-1 visa who was studying at Harvard." Order at 14. This statement conflates discriminatory effect and discriminatory intent and otherwise rests solely on Petrova's assertion.

relies on its conclusion, with respect to vindictive prosecution, that "there is evidence that the government elected to prosecute Ms. Petrova because of her status as a visa holder" (as well as her habeas challenge).   Order at 14.   For reasons discussed below with respect to vindictive prosecution, this finding is clearly erroneous.

By failing to acknowledge any material prosecution factors that a reasonable prosecutor might consider in this case, the Order starts and ends at the assumption that Petrova was singled out and that no legitimate reasons justified her prosecution.  Because the Order fails to apply *Lewis*, and because Petrova has not met her burden of demonstrating the existence of similarly situated individuals who were not prosecuted, the Order's grant of discovery on selective prosecution should be reversed.

### V. The Order Errs in Finding That Petrova Has Shown Some Objective Evidence of Vindictiveness

Finally, the government objects to the finding that Petrova is entitled to discovery related to her claim of vindictive prosecution.  The Order fails to heed First Circuit law requiring a showing of vindictiveness on the part of those making the charging decisions and errs in finding "objective" evidence of such vindictiveness.

*A.  Misapplications of Law*

The Order's finding is contrary to law because it disregards controlling First Circuit law and substitutes anomalous law from the Sixth Circuit to support its legal conclusions.

The Order cites, but does not apply, the leading First Circuit case on discovery into alleged vindictive prosecution, *United States v. Bucci*, 582 F.3d 108, 114 (1st Cir. 2009).  Order at 8-9. Under *Bucci*, "a defendant seeking discovery first [must] come forth with 'some' objective evidence tending to show the existence of prosecutorial vindictiveness." *Bucci*, 582 F.3d at 113. The defendant "must do more than simply identify a potential motive for prosecutorial animus."

11

*Id.* at 114 (citation omitted).  Importantly, the defendant "must connect any vindictive animus to those making the challenged charging decisions in [her] case." *Id.*

Much of the Order is devoted, not to actions of the USAO ("those making the challenged charging decisions"), but instead to the actions of CBP (Order at 2-3, 10-11), the litigation of Petrova's habeas case (*id.* at 3-6, 7-8, 10-11), and general allegations of hostility toward foreign students and academic institutions (*id.* at 4-5, 10).  The Order wrongly concludes that these other matters demonstrate vindictiveness by the USAO, contrary to *Bucci*.  Indeed, the linchpin of the Order is a finding that the "stakes for the government" in the habeas proceedings were "quite high" because Petrova presented evidence to the habeas court that CBP had acted unlawfully.  Order at 11.  But, under *Bucci*, the "stakes for the government" must mean the stakes of those making the challenged charging decision: the prosecutors.  And such a finding about the prosecutors' "stake" presumes the vindictiveness it is meant to demonstrate—that prosecutors shared an interest in defending CBP's administrative actions with respect to Petrova.  The Order identifies no legal or factual basis for attributing the interests of the habeas defendants to the prosecutors.[5]  Petrova "must do more than simply identify a potential motive for prosecutorial animus." *Bucci*, 582 F.3d at 114; *see also United States v. Sanders*, 211 F.3d 711, 718 (2d Cir. 2000) ("To warrant discovery, the defendant must show some evidence of genuine animus, not the mere possibility that animus might exist under the circumstances.").

The Order erroneously focuses on the "stakes for the government" by applying Sixth Circuit law instead of the binding precedent of the First Circuit.  Specifically, the Order adopts the

---

[5] Following the issuance of the Order, the court in the District of Vermont ruled that CBP lacked statutory authority to cancel Petrova's visa in the manner that it did.  *See Petrova v. U.S. Department of Homeland Security et al.*, No. 2:25-c-00240 (D. Vt.), Dkt. 125 (Apr. 7, 2026). Nothing about that ruling or its expected consequences suggests that the prosecutors in this case had a "stake" in preventing that finding.

Sixth Circuit's two-part test for recognizing a rebuttable presumption of vindictiveness based in part on "the prosecutor's 'stake' in preventing assertion of the protected right[.]"  Order at 9 (quoting *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023)).[6]  While that test has not been overruled in the Sixth Circuit, it pre-dates the Supreme Court's subsequent guidance in *United States v. Goodwin*, 457 U.S. 368 (1982) and *United States v. Armstrong*, 517 U.S. 456 (1996), the cases from which the First Circuit's standards in *Lewis* and *Bucci* derived.  *See United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (a "court faced with vindictiveness allegations" must weigh "prosecutor's 'stake' in deterring the exercise of some right.").  *Goodwin* underscored that a presumption of vindictiveness is especially difficult to establish pretrial "in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith."  *Bucci*, 582 F.3d at 112-113 (citing *Goodwin*, 457 U.S. at 377, 380-81).  It is far from clear that the Sixth Circuit's test is consistent with this subsequent precedent.  No other circuit has adopted such a test.  And guesswork about prosecutors' "stakes" is inconsistent with *Bucci*'s requirement that claims of actual or likely vindictiveness be backed by objective evidence.

---

[6]  However, even the Sixth Circuit's test does not support the Order's finding of presumptive vindictiveness based on alleged stakes external to the criminal case.  Courts within the Sixth Circuit typically consider the government's "stake" in relation to its criminal prosecution. The Sixth Circuit has explained, "the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution."  *United States v. LaDeau*, 734 F.3d 561, 569 (6th Cir. 2013) (finding stake where prosecution "was saddled with the prospect of restarting LaDeau's prosecution from scratch").  *Cf. United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (finding no stake in preventing defendant from filing a future motion to suppress); *United States v. Moon*, 513 F.3d 527 (6th Cir. 2008) (finding no stake in deterring defendant from filing third motion to dismiss indictment after two successful motions to dismiss prior indictments).  *But see United States v. Abrego*, 802 F. Supp. 3d 1055, 1061–64 (M.D. Tenn. 2025) (discussed below).

Second, the Order finds that, "[i]f HSI headquarters directed Massachusetts to open the investigation with a retaliatory purpose, the intervention of the Massachusetts U.S. Attorney's Office does not shield HSI's conduct from review." Order at 12. Here, the Order relies on another Sixth Circuit case, *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989), in looking to the potential motives of the referring agency.

In *Adams*, the government charged two married defendants with tax offenses after one of them sued her employer, the Equal Employment Opportunities Commission ("EEOC"). The Sixth Circuit ordered discovery on the theory that "the EEOC [may have been] able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for [defendant's] exercise of her statutory right to sue[.]" *Adams*, 870 F.2d at 1146. The court made this finding with the benefit of, among other evidence, a sworn statement of a former EEOC director who "state[d] under oath that he believe[d] the EEOC instigated the prosecution of [defendant] out of 'revenge.'" *Id.* The court advised, "Discovery should be confined to the narrow issue of whether the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken." *Id.*[7]

Even if instructive to this case, *Adams* must be squared with the First Circuit's directive that "any vindictive animus" must be connected "to those making the challenged charging decisions." *Bucci*, 582 F.3d at 114. At least one other circuit has interpreted *Adams* consistent with the principle that "animus of a referring agency is not, without more, imputed to federal

---

[7] Following remand, discovery, and an evidentiary hearing, the district court concluded that the prosecution had not been undertaken from vindictive motives. *United States v. Adams*, 38 F.3d 1217 (6th Cir. 1994). In affirming, the Sixth Circuit focused on the evidence relevant to the intent of the decision-makers behind the prosecution. *Id.* at *1-2 (noting that testimony of assistant U.S. attorney "was corroborated by other evidence, which indicated that the ultimate decision-makers neither knew the details of [defendant's] lawsuit against the EEOC nor had any ulterior motive for wishing to punish her").

14

prosecutors" and that "a defendant must show that the ill will, whoever its bearer, actually motivated his prosecution." *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (noting that the claim in *Adams* was supported by evidence that the EEOC had "instigated and pushed" the prosecution in retaliation for defendant's lawsuit against it).

The government does not contend, as the Order states it does, that "the actions of the Massachusetts U.S. Attorney's Office should be viewed in a vacuum." Order at 12. However, it is the defendant who must show "some objective evidence" of vindictiveness, and *Bucci* instructs that any such vindictive animus must be connected to the decisionmakers. Petrova has presented no evidence indicating that HSI "prevailed upon" the USAO to initiate charges with retaliatory purpose.

Finally, the Order likens Petrova's case to *Abrego*. Order at 11 (quoting *Abrego*, 802 F. Supp. 3d at 1061).[8] In that case, the court ordered discovery related to Abrego's claim of vindictive prosecution after finding that the defendant "sufficiently presented some evidence that the Government had a stake in retaliating against him for exercising his rights [in suing the government] and deterring him from continuing to exercise those rights." *Abrego*, 802 F. Supp. 3d at 1064. To the government's knowledge, *Abrego* is the first case to order discovery based on a government "stake" external to its criminal prosecution. The court reasoned that comments by senior Department of Justice personnel directly linking the reopening of HSI's investigation to Abrego's lawsuit "demonstrate[d] the burden he imposed upon" the defendants in his suit. *Id.* at 1062. Citing *Adams*, the court also posited that discovery may "show [that] HSI induced the DOJ to indict Abrego." *Abrego*, 802 F. Supp. 3d at 1063.

---

[8] Because the *Abrego* case was brought in the Middle District of Tennessee, Sixth Circuit law was properly applied.

Here, a finding akin to the one in *Abrego* is not warranted by the facts and would be inconsistent with First Circuit law. Under *Bucci*, Petrova cannot establish animus on the part of the prosecutors by pointing to the burdens of her habeas case on other parts of the government. Moreover, she offers no objective evidence that HSI, acting with retaliatory motive, induced the USAO to initiate charges.

### B. Erroneous Factual Conclusions

The Order's finding as to vindictiveness is also clearly erroneous, because it rests on speculative inferences that cannot be considered "objective evidence."

The Order first takes for granted that "Ms. Petrova's actions at Logan would not normally have resulted in felony criminal charges[,]" apparently based on the attorney declaration discussed above and Petrova's assertions to that effect. Order at 8. But, as discussed above, Petrova has not identified any offenders who acted similarly to Petrova, were caught by CBP, and were not prosecuted for their conduct. The Order fails to consider other material factors about her conduct.

The Order next places undue significance on the referral of the case by HSI Headquarters to HSI Boston. *See* Order at 10 ("[T]he facts before this Court establish that the criminal investigation was not initiated by CBP or HSI Massachusetts."); *id.* at 4 ("At this juncture it appears that it was unusual for the investigation to have been initiated by headquarters, but that will be the subject of discovery."). However, nothing in the record before the Court supports a conclusion that a referral from HSI headquarters was unusual. In fact, the only relevant information in the record—Special Agent Goldsworthy's testimony at the preliminary hearing— indicates that such a referral was *not* unusual. *See* Motion, Ex. D (Prelim. Hr'g Tr.). During cross-examination, Special Agent Goldsworthy testified that CBP does not always refer a case for investigation contemporaneously with the discovery of a potential smuggling violation. *Id.* at

34:15-35:03.  He testified that, in this case, the referral came from HSI's "Domestic Operations, the headquarters." *Id.* at 37:11-13.  He explained that Domestic Operations is "a unit that sends referrals to the field … they refer investigative referrals to the field." *Id*. at 37:14-17.[9]  Asked what initiated the referral at HSI, he stated, "Often times in the standard practice for a lot of these referrals are a review of the A files.  I'm not going to say I don't know [sic] the answer to your question, but reviewing A Files in the course of immigration proceedings often triggers an investigation." *Id.* at 37:21-38:09.  Asked "why it took two and a half months after the incident for the referral to happen[,]" he stated, "I won't say that it's very unusual to get referrals in this manner." *Id.* at 38:20-23.  Nothing in Special Agent Goldsworthy's testimony supports the Order's conclusion that the referral of this case from HSI headquarters was an anomaly.  That conclusion appears to be based solely on an unsupported assumption that HSI investigations typically originate in the field offices or through referrals from CBP.

The Order also cites the May 14, 2025 statements of the United States Attorney.  It concludes that those statements "indicated that Ms. Petrova's status as a Harvard researcher was a factor in the decision to charge her with a felony" and "referred to CBP's actions in summarily cancelling Ms. Petrova's visa favorably." Order at 10-11.  The United States Attorney's statements responded to Petrova's May 13, 2025 opinion piece in the *New York Times*, published after the government charged Petrova by criminal complaint but before that charge was unsealed.  The

---

[9] HSI's website describes Domestic Operations as follows: "Domestic Operations is responsible for managing, directing, and coordinating all investigative activities, initiatives, and operations of HSI's domestic field offices.  It promotes the implementation of and adherence to policies, procedures, guidelines, and directives governing investigative activities.  It also oversees all major HSI enforcement initiatives and is responsible for monitoring and evaluating the productivity of the various field offices and ensuring prompt communication of significant activity from field offices to Headquarters management."  *See* https://www.ice.gov/hsi/our-offices/hq#domestic-operations.

17

United States Attorney's remarks are not objective evidence that the government charged Petrova out of vindictiveness, based on Petrova's habeas case, media statements, or otherwise. Petrova's offenses occurred in connection with her research for a lab at Harvard; an acknowledgment of her affiliation with Harvard in connection with the charges is not evidence of vindictiveness against her as a Harvard researcher. And a statement disapproving of Petrova's abuse of her visa is not a defense of CBP's actions or evidence that prosecutors charged Petrova in retaliation for challenging CBP's actions. While Petrova invites the Court to read vindictiveness into these statements, such a reading cannot be considered "objective evidence" that would satisfy the showing required under *Bucci*.

Finally, the Order emphasizes that "the government offered to halt the prosecution if Ms. Petrova would self-deport." Order at 11, n. 2. But finding vindictiveness based on the government's DPA offer is particularly unwarranted. The government proposed the DPA after counsel for Petrova requested, by email on May 15, 2025, that the government consider "some resolution of this situation that recognizes the importance of border security and compliance with the law while avoiding life-shattering consequences." It is clearly erroneous to conclude that the inclusion of immigration consequences in the proposed DPA demonstrates vindictiveness in the initiation of charges. DPAs typically include conditions that approximate consequences of a criminal conviction. *See, e.g.*, *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 737 (D.C. Cir. 2016) ("In certain situations, rather than choose between the opposing poles of pursuing a criminal conviction or forgoing any criminal charges altogether, the Executive may conclude that the public interest warrants the intermediate option of a [DPA, under which] the government formally initiates prosecution but agrees to dismiss all charges if the defendant abides by negotiated conditions over a prescribed period of time."). The government's proposal contained conditions

that were less severe than those that likely would follow a conviction for smuggling.[10]  It is clearly erroneous to conclude that the government's good-faith efforts at proposing a pre-indictment resolution—undertaken at the direct request of defense counsel—serves as objective evidence of vindictiveness.

### VI. Conclusion

For the foregoing reasons, the government respectfully requests that the Court vacate the Order's rulings and deny Petrova's Motion.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY

By:    */s/ David M. Holcomb*
        DAVID M. HOLCOMB
        Assistant United States Attorney

Date:  May 4, 2026

---

[10] Because smuggling involves fraud against the government, it likely qualifies as a "crime involving moral turpitude," and a conviction likely would render Petrova's visa revocable, trigger Petrova's removal, and permanently disqualify her from obtaining another J-1 visa in the future.

**CERTIFICATE OF SERVICE**

       I hereby certify that this document was filed through the ECF system on May 4, 2026 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

By:    */s/ David M. Holcomb*
          David M. Holcomb
          Assistant United States Attorney
