# Exhibit A

1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS (Boston)

No. 1:26-cv-11825-WGY

KSENIIA PETROVA,
          Plaintiff

vs.

TODD W. BLANCHE, et al,
          Defendants

*********

For Hearing Before:
Judge William G. Young

Preliminary Injunction

United States District Court
District of Massachusetts (Boston.)
One Courthouse Way
Boston, Massachusetts 02210
Thursday, April 23, 2026

*******

REPORTER: RICHARD H. ROMANOW, RPR
Official Court Reporter
United States District Court
One Courthouse Way, Room 5510, Boston, MA 02210
rhr3tubas@aol.com

2

A P P E A R A N C E S


GREGORY ROMANOVSKY, ESQ.
     Law Offices of Gregory Romanovsky
     12 Marshall Street
     Boston, MA 02108
     (617) 787-0000
     Email: Romanovskylaw@gmail.com
     For the Plaintiff


EVE A. PIEMONTE, ESQ.
     U.S. Attorney's Office
     1 Courthouse Way, Suite 9200
     Boston, MA 02210
     (617) 748-3100
     Email: Eve.piemonte@usdoj.gov
     For the Defendants

P R O C E E D I N G S

(Begins, 10:00 a.m.)

THE CLERK:  The Court will hear Civil Action 26-11825, Petrova versus Blanche, et al.

THE COURT:  Good morning.  Would counsel identify themselves.

MR. ROMANOVSKY:  Good morning, your Honor, Greg Romanovsky for the plaintiff, Kseniia Petrova.

THE COURT:  Good morning.

MS. PIEMONTE:  Good morning, your Honor, Eve Piemonte on behalf of the defendant.

THE COURT:  Good morning to you both.  I appreciate that you have discussed matters among yourselves, but the matter is here to be heard.

And, um, Mr. Romanovsky, I will hear you first. Try to be specific as to what you would like this Court to do, because you want affirmative action from this Court.  So can you be as specific as possible.

MR. ROMANOVSKY:  Sure, your Honor.

We're not asking this Court to do anything other than what the mandamus statute and the APA provide, we're asking for action, we're asking for this Court to compel EYR, the Executive Office for Immigration Review, to make a decision on Ms. Petrova's pending motion.

THE COURT:  I understand that.  Well I just

invited you to speak and I said -- well forgive me. I've read all the papers.  It's that reach that I -- I'm frankly hesitant on.

Because let's assume -- and there's certainly evidence to support this, that the current administration has hollowed out their whole immigration judge system, they're swamped with cases, we're way behind, um, among other things, and yet you say "We want them to act on this petitioner's petition."  It may be --

Well let me try something out with Ms. Piemonte, if I can.

MR. ROMANOVSKY:  Sure.

THE COURT:  And it's this.

In the issue of bond hearings, I grant you the legal setting is different, but having now worked with these immigration cases -- not as much as my colleagues, but frequently I see briefs from the Office of the United States Attorney saying, "The Court has ordered bond hearings in like situations.  If the Court follows the view of the other sessions of this court, um, we have no objection if you order a bond hearing."

I guess the question I'm trying to tee up is this. Maybe a way to approach this would be for me to grant this mandamus -- at least in this case, and say, um,

because it appears that the appropriate officer -- now these so-called "immigration judges" are within the Department of Justice, so it's within the Department of Justice, has, if I read the papers correctly, has some doubt about his authority to act on this record. And it does seem to me that the petitioner is strongest on that point. And so it appears to me that the immigration judge, hearing officer, has the authority to act, and I have no had hesitancy in affirming that he has the authority to act.

Are you okay with that?

MS. PIEMONTE: No, your Honor. And I think the confusion, um -- respectfully the confusion may come from the type of Visa at issue here versus those other cases that you've referred to that involve, um, detention and a bond hearing of a different kind of --

THE COURT: We're not talking about detention here, or at least I don't think we are, and I'm going to ask you about that. But go ahead.

MS. PIEMONTE: And so here we're talking about a J-1 Visa, and as plaintiff aptly noted in the complaint -- and we'll have a footnote, that this isn't a type of case -- this is a J-1 Visa. The J-1 is the program, the Visa is what allows a student, for example, in the program to come and travel to and from.

Here the issue, um, her detention, her removal, her admissibility, is all in the process of being litigated before the immigration court, um, and frankly the Department's position has been that the District Court of Vermont hasn't actually yet issued a final decision in that matter.

THE COURT:  Well it's been represented to me that the District Court in Vermont, in its habeas proceeding, said that the determination was improper, and that's true, isn't it?

MS. PIEMONTE:  It's not true that it was improper, it's true that the decision said it was improper.

THE COURT:  (Laughs.)  Well I am expected to give full faith and credit to the decisions of my colleagues, and I do so.

MS. PIEMONTE:  I understand, your Honor.  But the point is there's an appeal period and a process that's happening in that District of Vermont case.  But the issue that the plaintiff is asking this Court to do, to decide, is to compel an Executive Office of Immigration Court Officer to act, and that exact issue, the precise issue --

THE COURT:  Yeah, that they started, and I understand that.

MS. PIEMONTE:  -- the precise issue was decided,

both by Judge Gorton and the First Circuit, and found that the Court lacks jurisdiction under 8 USC 1252(b)(9) to order, to compel the action.

Now this -- I can -- I have an extra copy of the case --

THE COURT: Well let me ask you a different question.

You've had time now to read the papers, as have I, um, there's a criminal proceeding here before my colleague, Judge Sorokin, and in that proceeding there are, um, various preliminary proceedings, and among them a rather extensive opinion by Magistrate Judge Dein. So there's an active criminal case going on now involving this same petitioner. In that proceeding, under the Bail Reform Act, Ms. Petrova is at liberty.

Can you -- and this I mean with the utmost seriousness, can you represent to me that during the course of that criminal proceeding, as long as she's in compliance with the orders of Judge Sorokin and the relevant magistrate judge, she's not going to be removed from the District, she's not going to be detained, she's not going to be taken into custody in any respect by ICE.

Can you represent that to me?

MS. PIEMONTE: I can't -- as I stand here today, I

can't --

THE COURT:  That's right, you cannot.

MS. PIEMONTE:  Because --

THE COURT:  And I'll let you tell me why.

MS. PIEMONTE:  There are -- this current civil case intersects not only with the criminal case that you've mentioned -- and respectfully, your Honor, I have spent many hours, you know from 3:00 yesterday afternoon until today, trying --

THE COURT:  I have every respect for it, yes.

MS. PIEMONTE:  -- trying to both do what this Court asked to determine resolution, but also to get up to speed, so I have not read the extensive decisions cited on bail.  But the -- the -- in that proceeding, um, Ms. Petrova's passport, I know, was taken.

So, um, in terms of travel, the issue at issue in this case, which is the J-1 Visa that allows her to travel, is not an issue.  As to whether she is detained, picked up, deported, right now there are admissibility hearings happening in the Immigration District Courts --

THE COURT:  What do you mean by "admissibility hearings"?

MS. PIEMONTE:  She has moved for admissibility into the United States because of the actions that were taken by the CBP officer at Logan Airport in canceling

the Visa.  But this Visa is a different type of Visa, it doesn't affect her "status," so to speak, in the United States the way other Visas --

THE COURT:  But when I asked the question, which to me is a crucial question, and I respect what you say, you say you can't represent to me that ICE people are not going to pick her up now if I don't give the relief that the petitioner wants.

MS. PIEMONTE:  But that's --

THE COURT:  That's a matter of -- hear me, that's a matter of real concern to me, where a grand jury of the citizens of this District have, ostensibly correctly, indicted her and she is under the orders of my colleague, Judge Sorokin.  Were ICE to interfere with her liberty, in the course of criminal proceedings, these criminal proceedings, it seems to me to be flat out a violation of her due process rights, her due process rights in the United States District Court, the District of Massachusetts.

And, um, the matter is before Judge Sorokin, not me, but, um, I think I would fail if -- if you're not going to represent that to me -- and I would accept your representation, but if the Department of Justice is so bereft of authority in these premises to, um, indeed do what the Department of Justice is expected and supposed

to do, and that is to go ahead and seek the enforcement and adjudication of the criminal laws, if you can't do that, because she's likely to be picked up and foul up Judge Sorokin's case, well then it seems to me that maybe I ought to order it, that she not be picked up.

MS. PIEMONTE:  But your order -- you Honor, that is not the relief that is being requested by this petition.

THE COURT:  I understand that.

MS. PIEMONTE:  And it conflates, um, as I said, a number of proceedings that are ongoing.

And it also assumes -- you know as I stand here, I don't know on any given day what any of these participants in the immigration process will or won't do.  You know I'm here on a very specific --

THE COURT:  Now look, I don't know what they will or won't do either, but I have a very clear understanding of what the orders of this Court require them to do or refrain from doing, and I'm contemplating -- and then I'm going to go back to the petitioner and say, "Look, if I enter an order, nothing's going to happen to her liberty, even though her Visa is not in effect."  That's -- the fact that someone overstays their Visa is not criminal.

And so I say, "Don't pick her up, leave everything

as it is."  I have nothing to say about what's going in the criminal case.  They've taken her passport, she can't come and go.  Well that's -- I have nothing to say about that, that's the normal workings of the criminal proceedings of this court.

And if I were to say, in this case, over which I do have jurisdiction, that she's -- everything's to remain status quo pending whatever is going on in the naturalization proceedings and subject to Judge Sorokin's orders under the Bail Review Act, as long as you're pressing that criminal case -- this case, in my mind, is very similar to **Abrego Garcia**, out of the Middle District of Tennessee, you know they indict him for human trafficking.  Well there's an issue then whether they can, at one and the same time, detain him.  So I have real problems with that.

Alternatively, um, because I have read Magistrate Judge Dein's very careful decision, there are very real questions about whether the criminal proceeding is selective or vindictive prosecution for the petitioner's exercise of her First Amendment rights.  Those are things that constitutionally concern this Court.  I still am skeptical of ordering the duly-constituted Hearing Officer in the Executive to do something.  I have real problems with that.  I want to hear that

further.

But if I entered an order that everything stays status quo, I have less problems, because then, while you can't guarantee me that your people will act lawfully, if they violate my order, I can take action.

All right?

MS. PIEMONTE:  Well just to be clear, your Honor, I didn't say that I couldn't guarantee someone would act lawfully, it's just --

THE COURT:  I didn't say that you did.  I'm saying -- I start out easy.  Maybe you don't have problems with my entering an order that -- I started out just saying, "Looks to me like he has the power to act." That's different than telling him he must act.  But if he is concerned whether he has the power to act, the authority to act, under the law, given the proceedings before the habeas court in Vermont, I'm --

MS. PIEMONTE:  But if --

THE COURT:  Hear me.  -- I'm satisfied he has the power to act.  And I would be prepared, without any order, to declare that, if you had no objection.  But if you do have an objection, before making that declaration, though I might still make it, I've got to be more careful in framing why I think that.  And then I fall back, "Well if she's not going to go for that,

then -- I'm a transparent person, I want to keep the status quo, and that I know I have the power to do -- at least I, in good faith, believe I do."  And I'm prepared to do it.

No one said that you were not saying that they would obey the law, I fully expect they will obey my lawful orders, unless those are stayed or vacated by a higher court.  I'm just trying to indicate where we're going here.

You can't tell me -- I just thought it would be helpful if I told him he had the power to act.  If you were okay with that, I would so declare.  And, um, then, if that's not good enough for Mr. Romanovsky -- and I have respect for the arguments he's making, but I don't know that I can go any further to tell him that.  But if he's concerned about whether they have the power to act, it appears to me he does.

MS. PIEMONTE:  But, your Honor, I --

THE COURT:  I'll hear you.

MS. PIEMONTE:  But, your Honor, I think the power to act, the focus, um, might be a bit different.  In other words, if I read the habeas -- if I read the immigration judge's decision correctly, his skepticism about the power to act involved not the power to act in immigration court proceedings as a whole, but the power

to act as to the Custom and Border Protection's officer's actions.  That -- those actions are being litigated in the District of Vermont and thus.  And so that is where I believe the genesis of that comment came from.  The complaint before the Court here is to order an immigration court, and the claims again, to act.

THE COURT:  Well then I need some help and I should go to the petitioner, and thank you.

I'm trying to be transparent here.  What Ms. Piemonte says resonates in the sense that the action that you may want is different from acknowledging the fact that the habeas court in Vermont set aside the action of the person at the border.

What do you say to that?

MR. ROMANOVSKY:  Your Honor, first I want to acknowledge, um, the challenge that my sister faced, getting herself up to speed, and I really appreciate her efforts.  That's Number 1.

Number 2, I think I wasn't clear enough in my pleadings, and I apologize if I wasn't, but we are arguing that the immigration judge has a duty to act, not just an authority to act, but a duty to act.  And I don't think the government will dispute the fact that immigration judges, as the regulation specifically provides, shall seek to resolve the questions before

them in a timely and impartial manner consistent with the Act and regulations.

There is a matter before the immigration judge, there's a specific motion before the immigration judge. So if he has a duty to act in general, then we're squarely within the mandamus world, and the APA world, and the question is, is this delay reasonable?

Can you order the judge to act, just like this Court often does order USCIS to act? When a child is aging out and you need -- the person needs a decision by a date certain, and it becomes unreasonable -- even if the delay is not unreasonable in the grand scheme of things, it becomes unreasonable as to the plaintiff's circumstances, and that's what we're arguing. It is unreasonable for the judge to continue to sit on the motion when there is -- when this delay effectively nullifies the relief that Ms. Petrova's seeking.

THE COURT: Why does it nullify the relief?

MR. ROMANOVSKY: Can I give you a very, um, quick and simplified timeline so that this Court can better understand what we're arguing and why?

THE COURT: Yes.

MR. ROMANOVSKY: There are two separate proceedings, one before the Vermont court and one in immigration court.

In immigration court, we have been making pretty much the same arguments that what happened at Logan Airport last February was unlawful, and the immigration judge acknowledged our arguments, but he said "Even though the cancellation -- the cancellation may have been unlawful, and even though he may be eligible for admission, my hands are tied because I cannot undue the Visa cancellation, it's up to a federal court judge to do that." And so we went back to the Vermont court and we filed a motion for partial summary judgment and we obtained an order from Judge Rice doing exactly that, setting aside the Visa cancellation.

The following day, after we got the order, we went back to the immigration court and we filed a motion and said, "Look, now there's no impediment, she's eligible for admission. The sole basis for your denial in the past was that she had a cancelled Visa, now she doesn't have a cancelled Visa, her Visa has been reinstated. Please issue a new decision consistent with that Court's opinion before the 26th of April when her Visa is set to expire."

And the Visa expiration date is very important, um, when it comes to the ability of either CBP or the immigration judge to admit somebody into the country. If somebody arrives at Logan Airport with an expired

Visa, CBP has the authority to sort of disregard that and admit the person into the country, but generally speaking, if you don't have a valid Visa, you cannot come in.  The immigration judge, who is the -- sort of the next layer, if CBP could not determine whether the person is inadmissible or admissible, they transfer the case to the immigration court, and that's where we are today.

So in essence the immigration judge stands in the position of CBP at the border, he's trying to determine is she admissible or is she not admissible?  And his last decision was "Sorry, my hands are tied, she's not admissible, she doesn't have a valid Visa."  Now she has a --

THE COURT:  But things have changed now.

MR. ROMANOVSKY:  Correct, so that's what we argued.

Then the judge gave 10 days to the government, and we waited for 10 days for the government to respond. The government filed an opposition to the motion, but the only argument they made is that Judge Rice's decision out of Vermont is somehow not final.

So we filed a motion for an emergency -- an emergency motion for an immediate ruling on the pending motion for admission, we again reiterated that "The Visa

18

is expiring on Sunday, please make a new decision."  We didn't say "Please admit her," we didn't say "Please say this in your order," we said, "Please make a decision."

And in response to our emergency motion, the immigration judge issued an order setting the matter for a new hearing on the motion on May 7th, well after the Visa expires.  So in essence this delay nullifies the relief, because when he hears the motion on May 7th, Ms. Petrova will once again have no valid Visa, so he won't have the power to admit, at least based on what he said in the previous order.

This is why it is crucial for the immigration judge to make a decision, um, before the 26th, and this is why, um, it's not really possible to issue an order here that would, um, make everything stay "status quo," as you put it, because the Visa will expire and the immigration judge will lose the ability to declare her admitted.

THE COURT:  Well you don't think he will, you're afraid he will say he loses the ability?

MR. ROMANOVSKY:  Well I don't want to speculate, your Honor.  Obviously it's well-documented the pressure that immigration judges are under nowadays.  I am sure Judge Masters wants to do the right thing.  But I cannot imagine that he's not thinking about being fired and not

19

thinking about the ramifications of a ruling in my client's favor.  But I don't want to speculate as to --

THE COURT:  Now suppose he -- suppose I were to grant the relief that you want and he were to reup this Visa.

MR. ROMANOVSKY:  Reinstate the Visa, correct.

THE COURT:  What does that mean?

MR. ROMANOVSKY:  That means that she -- what the immigration judge's decision will do, in this scenario, is the immigration judge will say, "She has a valid Visa, so I now admit her into the country in J-1 status."  And so the question your Honor probably has is what does it do to my client past April 26th?  And this is -- so my footnote in the mandamus complaint explains that, um, the status, the J-1 status, is different from the Visa.

So once that Ms. Petrova is admitted into the country, her status is governed by the Form DS-2019, that the Harvard Medical School can simply extend.  So as long as my client is admitted before the 26th, she's okay, and she will be in valid J-1 status.  And we'll go back to the point in time where we were supposed to be prior to the unlawful Visa cancellation.  That's been our effort all along, to bring her back to where she was supposed to be before the Visa cancellation, which is

now declared unlawful.

THE COURT:  I'm going to go back to Ms. Piemonte in a moment, but one of the things that sticks in my mind is the other immigration proceedings in the immigration courts.

What's that all about?

MR. ROMANOVSKY:  I am not aware of any other immigration proceedings in immigration court.  There was an immigration court proceeding in Jena, Louisiana initially, because Ms. Petrova spent 3 months in Louisiana in immigration detention.  Then the case was --

THE COURT:  We'll let Ms. Piemonte explain it to me.

MR. ROMANOVSKY:  Okay.

THE COURT:  So now -- (Laughs.)  It's probably where I should have started in the beginning.  He's now had his chance to explain to me, persuasively, why I should, in these unique circumstances, enter the affirmative order to act?  I'm not telling him how to act, I'm simply saying, "We'll just act on this."

Now what's wrong with that?

MS. PIEMONTE:  The jurisdiction of this Court to do that is precluded by 1252(b)(9).  I have an extra copy of Judge Gorton's decision, which also cites the

two First Circuit decisions indicating the same.  So I start with the jurisdiction.

THE COURT:  All right, and I hear you.  So let's start there.

What about that, how do I have jurisdiction?

MR. ROMANOVSKY:  Just like you would, your Honor, to order any government agency to act.  The provision that my sister is citing, 1252(b)(9), does not apply here.

1252 --

THE COURT:  Why not?  I mean the Congress has been very protective of the determinations of the immigration authorities.

MR. ROMANOVSKY:  Sure, and you would not be ordering the immigration judge to act in a certain way.  The immigration judge again has a duty to act, and all you would be ordering would be to act, not change his mind, not issue a ruling that we're arguing he should issue.  He has a pending motion before him.  So the order we're seeking would say that he now has to rule on the motion and make a decision.

THE COURT:  How does that distinguish the case from Judge Gorton's decision?

MR. ROMANOVSKY:  If I remember correctly, Judge Gorton's decision dealt with the government's refusal to

reopen a case.

THE COURT:  If you have a copy, it would be --

MR. ROMANOVSKY:  I'm looking at it and I'm pretty sure that --

THE COURT:  Well maybe I should have a copy because --

(Hands copy to judge.)

MR. ROMANOVSKY:  Yeah, so it's a motion-to-reopen case, your Honor.  And in that case, if I understand correctly, the plaintiff tried to argue that the Board of Immigration Appeals has to reopen a case, not that the Board of Immigration Appeals has to issue a decision.

THE COURT:  (Reads.)

MR. ROMANOVSKY:  So it's a very different proposition, your Honor.  We're not asking this Court to interfere in the immigration court's operation.

Just like when you order --

THE COURT:  Yes, I understand the argument.

MR. ROMANOVSKY:  Just like when you order USCIS to act, you typically don't tell -- on a mandamus complaint, you specifically don't tell him you have to approve the application, you tell him you have to act. That's all you --

THE COURT:  That really distinguishes the decision

of Judge Gorton.

What do you say to that?

MS. PIEMONTE:  If, your Honor, um -- and I don't mean to make this story-time, but if your Honor goes to the bottom of Page 3 of the printed case, it starts with Headnote 6.  And you'll see that Judge Gorton was confronted with the exact same proposition, which is that, um, the plaintiffs are only seeking enforcement of a duty owed under the Mandamus Act --

THE COURT:  I'm reading it.

(Reads.)

THE COURT:  All right, here's what I'm going to do.

MR. ROMANOVSKY:  Your Honor, may I respond to this particular issue?

THE COURT:  All right.

MR. ROMANOVSKY:  So 1252 -- my apologies, (b)(9), um -- 1262 in general is entitled "Judicial Review of Orders of Removal."  This is about the review of a particular action by an immigration judge.  And I understand -- and in this case that, um, counsel just handed to me, it's, um -- the plaintiff tried to frame it as mandamus relief, tried to say that the BIA had a duty to act, but in essence this was challenging a particular decision, and we're not challenging a

24

particular decision.

THE COURT:  All right.  Thank you.  I understand.

MR. ROMANOVSKY:  Okay.  Thank you.

THE COURT:  Here's the order of this Court.

The Court, um, grants the petitioner's request for a writ of mandamus and directs the appropriate so-called "immigration judge," the hearing officer in this case, directs that officer to act prior to the expiration of the Visa on --

Is it the 26th?

MR. ROMANOVSKY:  It is the 26th, Sunday.

THE COURT:  And the Court has reservations about its subject matter jurisdiction and, um, stays the order just entered for -- well let's see, until 2:00 p.m. this afternoon, in order to give the government a chance to, um, seek a stay because this Court has overstepped its subject matter jurisdiction, from the, um, the Court of Appeals for the First Circuit.  And unless the Court of Appeals stays the order, the petition, simply directing the appropriate official in the immigration department to act, shall take effect.

At the same time, this Court clearly has the authority and does now, whether my mandamus order is stayed or not, order that the petitioner shall not be redetained for immigration purposes pending further

orders of this Court or by order of the judicial officer in the petitioner's federal criminal action.

The petitioner shall not be transferred -- shall not be taken into custody, transferred to another District, unless the government provides advanced notice of the intended move.  Such notice shall be filed in writing on the docket in this proceeding and shall state the reasons why the government believes that such movement is necessary and should not be stayed pending further court proceedings.  Once that notice has been docketed, the petitioner shall not be moved out of the District for a period of at least 72 hours from the time of that docketing.

The petitioner shall not be deported, removed, or otherwise transferred outside the United States until further order of this Court, unless or until the criminal proceedings presently, um, pending in this court, before the Honorable Leo Sorokin, are dismissed or otherwise fully adjudicated, in which case notice will be given to this Court and the same 72-hour-time period shall take effect.

This order will remain in full force and effect, this order about not moving or redetaining, unless it is expressly modified or vacated upon appeal by a court of higher commission or by further order of this Court.

26

Is there any question about the Court's order?

MR. ROMANOVSKY:  Not from us, your Honor.

MS. PIEMONTE:  Your Honor, the United States objects and I'm willing to add the 1252(g) objection in terms of, um, staying an order -- staying the removal of the petitioner.

THE COURT:  Your objection is noted, your rights are saved.  Your invocation of the statute is acknowledged by the Court.  And this Court denies the stay beyond the stay I've already granted, that the order just declared shall not take effect until 2:00 p.m. this afternoon, April 24th, 2026.

All right, that's the order of the Court.  And I thank counsel.

We'll recess.

(Ends, 10:40 a.m.)

C E R T I F I C A T E


    I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

hereby certify that the forgoing transcript of the

record is a true and accurate transcription of my

stenographic notes, before Judge William G. Young, on

Thursday, April 23, 2026, to the best of my skill and

ability.




/s/ Richard H. Romanow 04-27-26
_____
RICHARD H. ROMANOW   Date