UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Crim. No. 1:25-10272-LTS-JGD |
| | ) |
| KSENIIA PETROVA, | ) Leave to file granted on June 4, 2026 |
| | ) |
| Defendant | ) |
| | ) |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE**

Petrova's Response (Dkt. 67) defends the Magistrate Judge's order granting sweeping discovery (Dkt. 55, "Order"). Like Petrova's prior filings, the Response speculates about the motives of the prosecutors and bends the law in an attempt to make this case out to be a retaliatory action that it is not. The Court should reject Petrova's claims and correct the Order's errors.

## I. Defendant Again Misstates Applicable Law

The government's Objections (Dkt. 63, "Obj.") outlined how the Order failed to apply the controlling law of the First Circuit on discovery into vindictive prosecution, selective prosecution, and prosecutors' legal instructions to the grand jury. Rather than redeem these legal errors, the Response offers the Court more inapplicable law, incorrect interpretations, and, in several cases, bad law. The Court should instead follow the clear standards of the First Circuit.

### Vindictive Prosecution

The Response continues to pay lip service to First Circuit case law on vindictive prosecution while ignoring its direction and cherry-picking law from the Sixth Circuit.

The First Circuit has stated clearly that a defendant "must connect any vindictive animus to those making the challenged charging decisions in his case." *United States v. Bucci*, 582 F.3d

108, 114 (1st Cir. 2009).  Courts within the First Circuit are bound by that requirement.  *See*, *e.g.*, *United States v. George*, 839 F. Supp. 2d 430, 443 (D. Mass. 2012) (quoting statement from *Bucci*, in finding "not a modicum of evidence to suggest that" the specific prosecutors "harbored any animus against" defendant); *Irish v. United States*, 2017 WL 5186608, at *2 (D.N.H. Oct. 19, 2017) (same, observing that defendant who claimed animus by FBI agent was "unable to present any evidence fairly attributing a vindictive motive to the person responsible for the charging decision"); *Espinal-Genao v. United States*, 2010 WL 3809997, at *5 (D.P.R. Sept. 28, 2010) (same, finding that "evidence connecting ICE's potentially vindictive motive to the U.S. Attorney's office was similarly lacking").

Lacking evidence of vindictiveness by the prosecutors here, the Response turns to case law holding that a prosecution may be vindictive if an agency "prevails upon" the prosecutors to seek an indictment.  Response at 9.  The government's Objections addressed those cases head-on.  Obj. at 14 (discussing *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989) and *United States v. Monsoor*, 77 F.3d 1031 (7th Cir. 1996)).  And those cases make clear—consistent with *Bucci*— that a defendant must connect any vindictiveness to the prosecutors.  *Monsoor*, 77 F.3d at 1035 (defendant must "connect the animus of a referring agency to a federal prosecutor" by showing that agency "prevailed upon the prosecutor"); *Adams*, 870 F.2d at 1146 (limiting discovery to the "narrow issue of whether the [agency], acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken").  *See also United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (absent animus by the prosecutor, defendant must show that prosecutor was a "stalking horse" for another with animus) (citation omitted).

The Response also cites *United States v. Wilson*, 120 F.Supp.2d 550, 555 (E.D.N.C. 2000), in which the district court dismissed an indictment for vindictive prosecution, finding "substantial

evidence that the U.S. Attorney in South Carolina prevailed upon the U.S. Attorney in this district"

to charge the defendant as punishment for successfully appealing a firearms conviction in the

District of South Carolina.  Response at 9.  The Response neglects to note that the Fourth Circuit

rejected this finding on appeal.  *See United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).

The appeals court reasoned, "Wilson's theory of demonstrating actual vindictive animus relies on

an ability to prove that the South Carolina U.S. Attorney held a vindictive animus based on

Wilson's successful appeal of his firearm-possession conviction *and that this animus was*

*somehow transferred* to the U.S. Attorney for the Eastern District of North Carolina" through an

email that "requested" Wilson's prosecution.  *Id.* at 316 (emphasis added).  The court found:

> There is nothing in the e-mail, or elsewhere in the record, to suggest that the U.S.
> Attorney in North Carolina was required to act on the request or felt any
> compunction to act for any reason other than the duty to prosecute cases in the
> public interest. … There is no evidence that the North Carolina U.S. Attorney or
> her assistants acted with any purpose of punishing Wilson's victory in the firearm-
> possession case or of vindicating any personal interest of the U.S. Attorney in South
> Carolina to punish Wilson for exercising his right to appeal the South Carolina
> conviction.

*Id.* at 317.  The court likewise concluded "as a matter of law" that the circumstances of the case

did not give rise to a presumption of vindictiveness.  *Id.* at 319-20 (declining to impute any

improper motivation by the U.S. Attorney in South Carolina to the prosecutors in North Carolina).

Under *Bucci* and these other cases, the Order is plainly incorrect in finding that a retaliatory

purpose of a referring agency alone would evidence a vindictive prosecution.  *See* Order at 12;

Obj. at 14.  The cases underscore the need for a district court to require a clear connection between

any alleged animus and prosecutorial action when faced with a vindictive prosecution claim.[1]

---

[1] *United States v. Abrego Garcia* is not to the contrary.  There, the court made factual
findings tying the alleged animus to the charging decision.  *United States v. Abrego Garcia*, 2026

Additionally, and for the first time, Petrova claims vindictive *enforcement*. Response at 7, 9. The Response does not develop this claim, and there is no trace of such a doctrine in federal case law. The one case cited in the Response—*United States v. Yu*, 161 F.4th 25, 45 (1st Cir. 2025)—addressed selective enforcement, not "vindictive enforcement." Response at 7.

### *Selective Prosecution*

The Order failed to apply the First Circuit standard for obtaining discovery for a selective prosecution claim from *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008), including the requirement to consider "similarly situated offenders" in light of "factors [that] legitimately may influence the government's decision to prosecute one individual but not another[.]" *Lewis*, 517 F.3d at 27-28. In defense of that failure, the Response merely denies allegations and downplays Petrova's conduct. Response at 16 (contesting allegation that Petrova lied to CBP officer).

The Response insists that "[a] comparison to other people who failed to declare items to CBP at the airport is apt and all that is needed at this stage." *Id*. That comparison is plainly insufficient as a matter of law. Petrova is charged based with conduct exceeding a mere failure to declare an item to CBP. A U.S. Magistrate Judge and a federal grand jury found probable cause that Petrova "fraudulently and knowingly" brought the frog embryo samples into the United States under the smuggling statute (18 U.S.C. § 545). The smuggling statute does not swallow all failures to declare items to CBP, as Petrova exaggerates.

Under *Lewis*, the Court must hold Petrova to her burden of showing evidence of discriminatory effect by showing that there exists even one similarly situated individual whose conduct was comparable to Petrova's, who was discovered by CBP, and who went unprosecuted.

---

WL 1454303, at *6 (M.D. Tenn. May 22, 2026) (finding "evidence that Main Justice exercised control over the charging decision down to the finish line").

The Order does not hold Petrova to her burden, and the Response presents no case law excusing her from it.

Since Petrova cannot supply evidence of discriminatory effect, her Response argues that, under a selective *enforcement* claim, no such evidence is needed.[2]  Response at 15 (citing *United States v. Sellers*, 906 F.3d 848, 855 (9th Cir. 2018)).  This claim also misstates case law.  In *Sellers*, the Ninth Circuit held that "a defendant need not proffer evidence that similarly-situated individuals of a different race were not investigated or arrested to receive discovery on his selective enforcement claim *in a stash house reverse-sting operation case*."  *Sellers*, 906 F.3d at 855 (emphasis added to portion omitted in Response).  The court in *Sellers* relaxed the showing for discovery in that context in part because of the difficulty of proving "who the ATF could have investigated but did not" in sting operations.  *United States v. Cousin*, 2022 WL 314853, at *15 (D. Mass. Feb. 2, 2022) (quoting *Sellers*, 906 F.3d at 855).  But even in *Sellers*, the court "require[d] the defendant to show '*something* more than mere speculation' and left open 'what that *something*' look[ed] like' for [the] district court to determine in the exercise of its discretion."  *Id.* (quoting *Sellers*, 906 F.3d at 855 (emphasis in original)).  *Sellers* and the cases it joined apply specifically to stings and have no bearing on this case.

### *Grand Jury Legal Instructions*

The Response fails to overcome the prevailing First Circuit law requiring a showing of a particularized need for the disclosure of the government's legal instructions to the grand jury.

---

[2] Here, too, Petrova advances a claim of selective *enforcement* for the first time.  Her discovery motion made only passing reference to this claim (Dkt. At 11), and the Order therefore did not address selective enforcement.  Petrova cannot develop this claim, because CBP did not single Petrova out for enforcement; her bag containing frog embryos was flagged through a K-9 screening of all travelers' bags.

Nearly all the cases cited in the Response addressed disclosure of the *court's* charges to the grand jury. *United States v. Alter*, 482 F.2d 1016, 1028 n.20 (9th Cir. 1973) ("Alter was entitled to know the content of the court's charges to the grand jury."); *United States v. Fuentes*, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008) (ordering disclosure of "script of the court's instructions and charges to the grand jury"); *In re Grand Jury Proc.*, 813 F. Supp. 1451, 1470 (D. Colo. 1992) ("The Court will also release the written instructions given to the Grand Jury upon empaneling.").

The Response identifies only one case in which a district court cast aside the requirement of a particularized need for disclosure of prosecutor's legal instructions. *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (Tigar, J.). However, the same district judge, "having the benefit of [] sibling courts' analysis," subsequently abandoned this position and merely required the production of grand jury instructions for the court's *in camera* inspection. *United States v. Pokorny*, 2026 WL 1270616, at *8 (N.D. Cal. May 8, 2026) (Tigar, J.).[3]

The Order makes no finding of a particularized need for disclosure of the prosecutors' instructions to the grand jury, and the Response offers no legal excuse for that oversight.

## II. Defendant Has Not Met Her Burden for Discovery

By misapplying applicable law, the Order erroneously found evidence of vindictiveness and selectiveness. Petrova's Response defends the Order's errors by recycling claims that do not amount to evidence.

As described above, Petrova must present "some objective evidence" that the prosecutors themselves harbored vindictiveness or that they were "prevailed upon" by others with such animus. Petrova has done neither.

---

[3] As previously noted (Obj. at 6), the government stands ready to provide its legal instruction on smuggling for the court's *in camera* review if requested.

Petrova has presented no objective evidence that HSI opened the investigation in retaliation for her habeas case or her speech, rather than based on its review of her underlying conduct. The Order and Petrova's filings make assumptions based on the timing of the criminal referral and various administrative actions around that time. *Bucci* is clear that "suspicious timing alone" and a "potential motive for prosecutorial animus" are not enough to obtain discovery. *Bucci*, 582 F.3d at 114. Petrova has presented no objective evidence that the referral for investigation—prior to prosecutors' involvement—was retaliatory. But even if she could, that evidence would be insufficient without somehow connecting any animus to the prosecutors.[4]

From there, Petrova has presented no objective evidence that HSI "prevailed upon" the U.S. Attorney's Office to bring criminal charges or "transferred animus" to the U.S. Attorney's Office. As in *Wilson*, Petrova has presented no objective evidence that the U.S. Attorney's Office "was required to act on the [referral] or felt any compunction to act for any reason other than the duty to prosecute cases in the public interest." *Wilson*, 262 F.3d at 316.

And Petrova has presented no objective evidence that the prosecutors themselves harbored animus against Petrova based on her habeas case or her speech. The Order assumes "stakes" in the habeas litigation that the prosecutors simply did not and do not have.[5] Petrova's Response doubles down on a strained and subjective parsing of the U.S. Attorney's video statement announcing the charges against Petrova. Petrova insists that the mere mention of CBP's revocation

---

[4] *See*, *e.g.*, *Monsoor*, 77 F.3d at 1035 (7th Cir. 1996) (denying discovery where defendant "submitted no evidence suggesting that [agents], whether or not ill-inclined toward [defendant], prevailed upon the United States Attorney in her decision to indict him" and therefore "presented no evidence suggesting that his prosecution was vindictively motivated").

[5] The Response misleadingly states that "the government unsealed the criminal charges … [and] then filed a brief in the habeas case" arguing that her habeas petition was moot. Response at 10-11. The government—here, the prosecutors—took no action of any kind in the habeas case.

of her visa demonstrates that the U.S. Attorney's Office brought criminal charges to punish her for challenging CBP's actions, and that a comment critical of the *New York Times* for publishing her op-ed proves that the office charged her to punish her for her media attention. The Court should reject Petrova's invitation to erase any line between mere statements of disapproval and confessions of retaliatory animus. The U.S. Attorney's statement falls far short of the latter.

In fact, the Response misrepresents the U.S. Attorney's statement twice, each time to accuse the U.S. Attorney of lying. Response at 3 (stating that the U.S. Attorney "falsely claim[ed]" that Petrova "endangered" the health and safety of others), 13 (claiming that the U.S. Attorney made the "false assertion" that Petrova's research samples "threatened public safety"). The U.S. Attorney's statement referred to "Ms. Petrova's alleged lies and disregard for the health and safety of others." That statement accurately describes Petrova's alleged conduct. She is alleged to have circumvented CBP inspections that are intended to keep the public safe and to regulate what comes into the country, regardless of whether an item is alive, inert, harmful, or harmless. That Petrova chose to substitute her own judgment and hide items from CBP—and that she continues to justify her actions by stressing that those materials were harmless—underscores that the U.S. Attorney's remark that "the rule of law does not have a carve-out for educated individuals with pedigree" was directed at Petrova's conduct, rather than anything Petrova filed in court or said in the media.

With respect to selective enforcement, Petrova must present "some evidence" of discriminatory effect. Petrova has shown no evidence of the existence of any other individual whose conduct resembled hers and who was not criminally prosecuted. The Response dismissively asks, who among us has not failed to declare an item or "traded messages with family or friends" about bringing "fruit or cured meats" from abroad? Response at 16-17. These scenarios are not comparators, and supposition is not evidence. The Response is left to rely on the

8

statements of a customs attorney who only establishes that he never saw a case like Petrova's in his career, not that he is aware of conduct like Petrova's that went unprosecuted.[6]

For all the irregularities that Petrova alleges, the Court should consider the many facts of this case that are not at all unusual or surprising:

- It is not surprising that CBP did not process or refer Petrova for criminal prosecution on February 16, 2025, the day it believed that—rightly or wrongly—it had cancelled Petrova's visa and placed her in removal proceedings. From CBP's perspective, there would have been no point in doing so, because Petrova would not remain in the country.

- It therefore is unsurprising that Petrova's conduct came to HSI's attention some time after the February 16, 2025 incident.

- It is not unusual, and it is in fact routine, for HSI headquarters to refer criminal investigations to field offices.

- It is not surprising that, upon receiving a referral from HSI about conduct pertaining to a CBP encounter at Logan Airport, the then-Chief of the National Security Unit evaluated the case and coordinated further investigation.

- It is unremarkable that this same Chief—a 27-year veteran of the office with experience prosecuting wildlife smuggling cases[7]—concluded that Petrova's conduct violated the smuggling statute and applied for a criminal complaint.

- It was not unusual for the government to offer Petrova a deferred prosecution agreement ("DPA") at defense counsel's request, or for that proposed DPA to carry immigration consequences for Petrova.

- It is not surprising that, at the preliminary hearing, the federal agent-witness did not offer legal definitions of "biological materials" and "merchandise" in response to objectionable defense questioning. The agent is not a lawyer. The charges do not involve any legal definition of "biological materials." The defendant can consult

---

[6] Some reporting suggests that Petrova was unique in concealing research samples from CBP. *See* Angela Mathew, *'Your materials have been incinerated.' The confounding process of traveling with scientific samples*, Boston Globe (Aug. 23, 2025) ("All the scientists [interviewed] mentioned that they always declare samples when traveling with them.").

[7] *See*, *e.g.*, *United States v. Manghis et al.*, 08-cr-10090-NG; *United States v. Boss*, 19-cr-40050-TSH; *United States v. Bied*, 24-cr-10171-FDS.

9

the statutory definition of "merchandise" at 19 U.S.C. § 1401(c) ("goods, wares, and chattel of every description") and case law confirming its broad, non-commercial reach.  *See*, *e.g.*, *United States v. Lawson*, 618 F. Supp. 2d 1251, 1256 (E.D. Wash. 2009) (Rhesus monkey constituted "merchandise" within the meaning of the smuggling statute because monkey was defendant's chattel).

- It is not surprising that, once Petrova declined the government's DPA offer, the government proceeded to seek an indictment rather than prolong briefing over a preliminary charging document.

- And it is not unusual that the resulting indictment, on which the government may proceed to trial, contained multiple theories of liability rather than just the charge in the complaint.

*        *        *

The grave epigraphs with which Petrova opens her Response are misplaced in this case. Neither the law nor the facts warrant the discovery that the Order granted.  The government respectfully requests that the Court vacate the Order and deny Petrova's discovery motion.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY


By:    */s/ David M. Holcomb*
        DAVID M. HOLCOMB
        Assistant United States Attorney

Date:  June 12, 2026

10

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system on June 12, 2026 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

By:    */s/ David M. Holcomb*
David M. Holcomb
Assistant United States Attorney